# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

JOSEPH GREGORY MILLER,   )
              )
  Petitioner,      )
              )  Case No. CV410-249
v.            )
              )
WILLIAM DANFORTH,    )
              )
  Respondent.     )

## REPORT AND RECOMMENDATION

Joseph Gregory Miller petitions this Court for 28 U.S.C. § 2254 relief. Doc. 1, *as amended*, doc. 4; *see also* doc. 9. The state opposes, contending that his claims are either procedurally defaulted, without merit, or both. Doc. 11. His petition should be denied.

## I. BACKGROUND

In 2006, a Chatham County, Georgia jury convicted Miller of malice murder and related offenses for shooting Lisa Sloan to death. "[T]he trial court sentenced him under O.C.G.A. § 17-10-7(c) to life in prison without the possibility of parole for malice murder, twenty years

consecutive for aggravated assault, five years consecutive for possession

of a firearm during the commission of a felony, and five years concurrent

for possession of a firearm by a convicted felon." *Miller v. State*, 283 Ga.

412, 413 (2008).   He did not challenge the evidentiary sufficiency on

direct appeal, *id.*, but the *Miller* court nevertheless deemed it sufficient.

A rational trier of fact, it said, could find from the evidence that

> Miller first met Sloan at a motel in Savannah known for
> prostitution and drug dealing sometime around 1999 or 2000.
> Miller, an admitted crack cocaine user, had gone to the motel, in
> his words, "to look for a woman." He encountered Sloan in a motel
> room where she had been smoking crack cocaine with one of her
> drug dealers. The drug dealer was refusing to let Sloan leave
> because Sloan owed her money. Miller paid off the dealer so Sloan
> could leave with him. After that first night at the motel, Miller and
> Sloan lost contact with each other for several years. Miller met
> Sloan again approximately three months after the death of Sloan's
> husband in January 2003. A couple months later, Sloan became one
> of Miller's "girlfriends," and the two continued seeing each other
> for the next two years. The relationship was an extremely abusive
> one, and Miller beat Sloan on numerous occasions, including one
> incident in which he assaulted her with a lead pipe.
>
> On February 26, 2005, Timothy Stone dropped Sloan off at the
> motel where she was living. Stone was a friend of Sloan's who was
> interested in seeing her romantically. Sloan ascended the stairs to
> the second floor to get to her room. Miller was waiting for her and
> chased her across the balcony. Miller shot Sloan twice in the head
> and once in the hip, killing her. Miller then turned and began firing
> at witnesses in the parking lot. One of the shots struck Maggie Fae
> Griffin, a 75-year-old grandmother from Tennessee on her way to
> Disney World with her son, daughter-in-law, and three young
> grandchildren. The bullet struck Griffin in the chest, but she

2

survived.

*Id.* at 412-13.

Donald B. Lowe, III represented Miller at trial and on his initial motion for new trial.  Doc. 15-4 at 38-39; doc. 14-6 at 73.[1]  Steven Sparger represented him on his second amended motion for a new trial, at the hearing on that motion, and on Miller's direct appeal.  Doc. 14-6 at 75, 90-99, 102, 105; doc. 14-7 at 1-54; doc. 15-4 at 38-39.   Sparger extensively briefed the new-trial motion.[2]  Doc. 14-6 at 90-99, 105; doc. 14-7 at 1-54.   In his supporting brief, and during the hearing on it, Sparger raised Ineffective Assistance of Counsel (IAC) claims against Lowe, doc. 14-7 at 12-53 (brief); doc. 15-4 at 38-58 (MNT hearing), as he also did on direct appeal. *Miller*, 283 Ga. at 415-16. Sparger succeeded only in getting Miller resentenced for malice murder, but not on the aggravated assault and two firearms charges. *Id.* at 417; *see also* doc. 13-7 at 12.

Proceeding *pro se* before the state habeas court, Miller alleged that both counsel were ineffective.   Doc. 13-1; doc. 13-2. Following an

---

[1]   The Court is citing only to its docketing software's pagination, which may not always line up with each paper-document's pagination.

[2]  The trial court summarily denied it. Doc. 14-8 at 7-8.

evidentiary hearing, doc. 13-7; *see also* doc. 15-1, Miller's habeas petition was denied.  Doc. 13-3.  Miller appealed to the Georgia Supreme Court. Doc. 13-4.  That court dismissed the appeal because Miller failed, despite the lower court's instructions, to accompany his notice of appeal with a "certificate of probable cause to appeal in [the supreme court] as required by OCGA § 9-14-52(b)."  Doc.  13-5, *reconsideration denied*, doc. 13-6.

During that aborted appeal process Miller filed a second state habeas petition.  Doc. 15-5.  For this he used a federal, 28 U.S.C. § 2254 form, but "front-ended" it with a state court summons and civil filing form.  *Id.* at 1-2.  Its claims section more or less mirrors what he filed here.  *Compare* doc. 15-5 at 9-21 *with* doc. 1 at 6-18.  But the state habeas court dismissed it, upon *Miller's* motion, doc.  13-6,  thus rendering it a legal nullity.  Nevertheless his § 2254 petition here is timely filed.  Doc. 1.

## II.  GOVERNING STANDARDS

In both his direct and collateral appeals the Georgia courts issued written opinions.  Rulings on fully adjudicated issues must "be given the benefit of the doubt," *Felkner v. Jackson*, ___ U.S. ___, 131 S. Ct. 1305,

4

1307 (2011) (quotes and cite omitted), which means this Court cannot disturb them unless they

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court*[3] of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis and footnote added).

This is a highly deferential, "difficult to meet" standard that petitioners must overcome. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786 (2011); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended

---

[3]   "Clearly established" means a Supreme Court holding, not dicta, and a holding that exists at the time of the state court decision that applies the legal principle at issue. *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1399 (2011); *Thaler v. Haynes*, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); *Hunt v. Comm'r, Ala. Dept. of Corrs.*, 666 F3d 708, 720 (11th Cir. 2012); *Bowles v. Sec'y for Dep't of Corrs.*, 608 F.3d 1313, 1315 (11th Cir. 2010). Lower court opinions, even if directly on point, will not suffice. *Bowles*, 608 F.3d at 1316.

in existing law beyond any possibility for fairminded disagreement."
*Harrington*, 131 S. Ct. at 786-87, quoted in *Hill v. Humphrey*, 662 F.3d
1335, 1345 (11th Cir. 2011) (en banc).

    And "2254(d) applies even to summary state court opinions, as well
as to opinions that do not cite Supreme Court precedent." *Means v.
Sec'y, Dep't of Corrs.*, 433 F. App'x 852, 853 (11th Cir. 2011) (citing
*Harrington,* 131 S. Ct. at 784). So if part or all of a state court's decision
is unaccompanied by any legal analysis or explanation, the petitioner
must still show that there was no reasonable basis for the state court to
deny relief. *Johnson v. Sec'y, Dep't of Corrs.*, 643 F.3d 907, 930 n. 9
(11th Cir. 2011).[4] This Court also must presume state court factual

---

[4]    Essentially, petitioners must reverse engineer adverse state court rulings, i.e.,
come up with all the ways such rulings *could* be legally supported, then knock each
one down.

> Under § 2254(d), a [federal] habeas court must determine what arguments or
> theories supported or, as here, *could have supported*, the state court's decision;
> and then it must ask whether it is possible fairminded jurists could disagree
> that those arguments or theories are inconsistent with the holding in a prior
> decision of this Court.

*Harrington*, 131 S. Ct. at 786 (emphasis added); *Amos v. Thornton*, 646 F.3d 199, 205
(5th Cir. 2011) ("Where a state court's decision is unaccompanied by an explanation,
the habeas petitioner's burden still must be met by showing there was no reasonable
basis for the state court to deny relief. To assess whether a petitioner has made this
showing, we determine what arguments or theories *could have* supported the state
court's decision and then ask whether fairminded jurists could conclude that those
arguments and theories are consistent with the Supreme Court's relevant
teachings.") (quotes, footnotes, and alterations omitted).

determinations to be correct; petitioners must rebut that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

Ineffective assistance of counsel (IAC) claims, even when reviewed *de novo*, are subject to a standard that packs its own internal layer of deference.  *Strickland v. Washington*, 466 U.S. 668 (1984).  "[A] defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419 (2009).  Thus, he must show that his lawyer's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  Courts apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689.  *Strickland* error must be so serious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  On the prejudice prong the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

"'Surmounting *Strickland*'s high bar is never an easy task,'" *Harrington*, 131 S. Ct. at 788 (quotes and cite omitted), and no hindsight

or second-guessing is permitted. *Id.* But where a state court has already ruled on IAC claims, the petitioner's burden of

> [e]stablishing that [its] application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S. Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is *'doubly'* so, *Knowles*, 556 U.S., at ----, 129 S. Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S. Ct., at 1420]. *Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (emphasis added). Because this "[d]ouble deference is doubly difficult for a petitioner to overcome . . . it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson*, 643 F.3d at 911; *Hamner v. Deputy Sec'y of the Fla. Dep't of Corrs.*, 438 F. App'x 875, 880 (11th Cir. 2011) ("Our standard of review is 'doubly deferential' when 'a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard.'") (*quoting Knowles*, 129 S. Ct. at 1420).

Before the state court Miller had to meet the *Strickland* standard by establishing both that (a) his counsel's performance was deficient in

that "it fell below an objective standard of reasonableness," and (b) but for the attorney's errors, there is a reasonable probability that the result of the proceeding would have been different. *Harrington*, 131 S. Ct at 787. He thus was required to plead and prove that (a) counsel erred; (b) no reasonable lawyer would have done what her lawyer did; and (c) his act or omission was outcome-altering. *Borden v. Allen*, 646 F.3d 785, 822-23 (11th Cir. 2011) (IAC claim denied because petitioner failed to plead it with adequate specificity).

Before this Court, he must show that the state court's application of the *Strickland* standard was "*unreasonable*," which "is different from an *incorrect* application of federal law." *Harrington*, 131 S. Ct. at 785 (emphasis in original). Indeed, "even a strong case for relief does not mean the state court's contrary conclusion is unreasonable." *Id.* at 786. A state court's decision is unreasonable only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 131 S. Ct. at 786. In other words, if "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard," federal habeas relief must be denied. *Id.* at 788; *Johnson*, 643 F.3d at 910-11.

## III.  ANALYSIS

### A.  Ineffective Assistance -- Sparger

In his first claim Miller complains that Sparger "was ineffective by refusing to involve or incorporate petitioner in developing an appeal." Doc. 1 at 6.  He also "unreasonably and prejudicially failed to be an adversary in any way to the state" by "failing to raise the more obvious and stronger claims during appeal, and on motion for reconsideration. . . ." *Id*.  Sparger also failed "to secure the presence of material witnesses. [And, he] failed to prepare defendant to testify in his own defense at [sic] motion for new trial." *Id*.

These claims fail to meet § 2254's pleading requirements.  Section 2254 petitioners must not only factually plead, argue, and support their claims by citation to the record or other competent evidence, they must also show *how* the state court's ruling is § 2254(d)-unreasonable. *Fortson v. Davis*, 2011 WL 5148662 (S.D. Ga. Oct. 6, 2011) (applying *Borden*, 646 F.3d at 810; *Fils v. City of Aventura,* 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by parties."); and *Chavez v. Sec'y Fla. Dep't of Corrs.*, 647 F.3d 1057, 1059-60 (11th Cir. 2011) (district courts are not

"required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition. Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts.").

So for trial-counsel IAC claims, for example, a petitioner must show that counsel's error had enough of a substantial and injurious effect or influence in determining the jury's verdict so as to undermine confidence in it. *Fortson*, 2011 WL 5148662 at * 6; *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). He also must show *how* the claimed deficiency, in light of the *totality* of the evidence, made it "reasonably probable" that a different result would have occurred. *Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328, 1353-54 (11th Cir. 2011). That means detailing and record-citing the various layers of evidence and counter-evidence and illuminating the pivotal difference the act or omission would have made.

Next, petitioner must thread all that through the above-noted, "double-deference" IAC-criteria. Hence, he must "plead and prove that (a) counsel erred; (b) no reasonable lawyer would have done what h[is] lawyer did; and (c) his act or omission was outcome-altering." *Fortson*,

11

2011 WL 5148662 at * 2; *Muniz v. Smith*, 647 F.3d 619, 624 (6th Cir. 2011). And, he must show that the state court's *Strickland* ruling on such claim was "§ 2254-unreasonable," which "is different from an *incorrect* application of federal law." *Harrington*, 131 S. Ct. at 785. This is also true for *appellate*-IAC claims, except that the outcome-altering component obviously applies only to the state appellate process.

It follows that a petitioner cannot simply spot errors, stack them up in a list, then impliedly ask the Court to run them through the above analytical framework. The petitioner must do that, not the Court. Here Miller has not even acknowledged these standards, let alone come close to meeting them. Accordingly, Ground One fails on these grounds alone.

Other grounds reinforce this result. The state points out, and this Court agrees, that this Ground also fails because it is procedurally defaulted. Miller presented the gist of these claims to the state habeas court, but after it ruled against him he failed to appeal (by bungling his appeal) to the Georgia Supreme Court. Doc. 11-1 at 5-6. Because of that failure, the state argues, Miller has failed to exhaust[5] and thus

---

[5] Under § 2254(b), Miller was required to first present all of his federal claims to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). He had to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845; *Pope*

procedurally defaulted,[6] this claim. *Id.* at 6. And, it correctly concludes, Miller has failed to show cause or prejudice to circumvent that default. *Id.*; *see also McCleskey v. Zant*, 499 U.S. 467, 502 (1991); *Mincey v. Head*, 206 F.3d 1106, 1135-37 (11th Cir. 2000) (a petitioner can overcome a procedural default by showing "cause" for the default and resulting "prejudice" or that "a fundamental miscarriage of justice" will occur if the claim is not addressed).

Miller raised a host of IAC claims on his *direct* appeal. *See Miller*, 283 Ga. at 415-17. But they were only against Lowe, not Sparger. He

---

*v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (applying this "one complete round" requirement to the state collateral review process as well as direct appeal); *Smith v. Tucker*, 2011 WL 6955836 at * 4 (N.D. Fla. Dec. 5, 2011). He satisfied the exhaustion requirement for the IAC claims that Sparger presented for him against Lowe in the *Miller* appeal. *Walker v. Zant*, 693 F.2d 1087, 1088 (11th Cir. 1982) (the exhaustion doctrine does not require a petitioner to seek collateral review in state courts of issues raised on direct appeal); *Roberts v. Morales*, 2011 WL 5057053 at * 3 (S.D. Ga. Sep. 27, 2011). The issue here is whether he did so for his claims against *Sparger*.

[6] A petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar."); *Brown v. Walker*, 2011 WL 3205738 at * 5 (S.D. Ga. Jun. 14, 2011). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." *Jones v. Campbell*, 436 F.3d 1285, 1304 (11th Cir. 2006). And "fairly presented" means more than the mere passing reference to a constitutional claim. *Ramos v. Sec'y, Fla Dept. of Corr.*, 441 F. App'x 689, 696 (11th Cir. 2011) (no exhaustion where petitioner made only passing reference to federal law in his state appellate brief); *Allen v. Barrow*, 2011 WL 7004197 at * 3-4 (N.D. Ga. Dec. 16, 2011).

failed to raise his IAC claims against *Sparger* on his *state habeas* appeal -- because he effectively failed to appeal. His 'Ground One" claims against Sparger, then, are procedurally defaulted, as *Pope* has not been overruled, and he has not even argued cause and prejudice to overcome his default.[7] *See also Hunt v. Comm'r, Ala. Dep't of Corr.*, 666 F.3d 708, 729 (11th Cir. 2012) (postconviction IAC claim procedurally defaulted by § 2254 petitioner's failure to petition the Alabama Supreme Court for certiorari review of state habeas ruling against him).

In Ground Two, Miller faults Sparger for failing "to take advantage of records to support his case, log in/out records at the jail, clerk files."

---

[7] The Court is aware of *Watson v. Walker*, 349 F. App'x. 390 (11th Cir. 2009). "The district court [there] denied the petition because Watson failed to appeal the denial of his state habeas petition to the Georgia Supreme Court and thus, his claims were unexhausted and procedurally barred." *Id.* at 390. The *Watson* appellate panel granted review on this issue:

> Whether Ga. Sup.Ct. R. 40, as amended, has any [e]ffect on this Court's holding in *Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) that a Georgia prisoner must file an application for a certificate of probable cause with the Georgia Supreme Court challenging the denial of his state habeas petition in order to exhaust his state remedies and thereby avoid a procedural default.

*Id.* (footnote added). Watson, however, failed to address that issue, so the court deemed his appeal abandoned. *Id.* at 391. The same issue surfaced again in *Hafez v. Frazier*, 440 F. App'x 751 (11th Cir. 2011), but also was not reached on technical grounds. *Id.* at 753. Miller has not raised this issue here. And Ga. Sup.Ct. R. 40 applies to further *direct* (not habeas) appeals from *Georgia Court of Appeals* decisions, *see Pope*, 358 F.3d at 854 n. 2, while Miller's state habeas appeal route took him directly from the *state habeas court* to the Georgia Supreme Court, per O.C.G.A. § 9-14-52(a)(-(b). So Ga. Sup.Ct. R. 40, and thus any affect it might have on *Pope's* validity, would not be relevant in this case.

Doc. 1 at 6.  Here he seems to contend that Sparger could have, at the new-trial-motion hearing, impeached Lowe and thus show that Lowe was ineffective -- because such records would prove  . . .  Miller doesn't say. Presumably he means to say "prove that Lowe was ineffective."  But the Court presumes nothing here, as it is *Miller's* burden to plead and prove all of his § 2254 claims.  This claim thus fails on the merits.  For that matter, the state correctly argues that Ground Two is also procedurally defaulted for the same reasons stated on Ground One.  Doc. 11-1 at 10-11.

Ground Three suffers the same fate.  Here Miller faults Sparger for failing to "state there exist[s] a reasonable probability [that] the outcome of my trial would have been different, absent the errors counsel has raised."  Doc. 1 at 6.  But his "supporting facts" are basically nonsensical. This claim fails the above-noted pleadings standards (presumably Miller wants this Court to search the record and link this assertion to some chain of events that form a § 2254-viable claim), and the Court also agrees with the state that this claim likewise is procedurally defaulted. *See Hunt*, 2012 WL 19384 at * 17.

Ground Four also fails.  Here Miller "moves this court to find that

the state was derelict in its duty to assure a fair trial on the following issues." Doc. 1 at 6. He then laundry-lists things like this: "Prosecutorial misconduct for not placing Captain Ethan Davis on the Master witnesses subpoena list. Who placed the defendant's character into evidence and misinformed the jury. (T. 269)." Doc. 6 at 7. Again, Miller evidently would like this Court to construct his claims for him. It will not. And Ground Four likewise is procedurally defaulted, per *Pope*.

In Ground Five Miller fires his guns at Lowe, and it may be said that he presented most of his claims to the state courts when Sparger raised them for him before Georgia Court of Appeals. *See Miller*, 283 Ga. at 416 n. 14 (expressly enumerating a substantial list of IAC-based claims against Lowe). But Miller has more or less repackaged them here, then added some new ones. Doc. 1 at 8-16; *see also* doc. 11-1 at 14-16 (the state has restated them for him). Yet, he has failed to show that the repackaged rulings were unreasonably decided by the *Miller* and state habeas courts. *Id.* at 17-20.

Again, a petitioner cannot raise a claim before a state court, suffer an adverse ruling, then simply repeat the claim in a federal habeas court for a "second look" (i.e., appellate review). Instead, they must *plead and*

*prove* that the state courts' rulings were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87. So even though it is regrettable that the *Miller* court simply listed Miller's IAC claims and, without explaining why, declared that they failed to amount to sufficient *Strickland*-level prejudice, petitioner must demonstrate (and this includes the reverse-engineering noted *supra*, n. 4), in his § 2254 petition here: (a) *how* those IAC errors amounted to sufficient *Strickland*-level prejudice to support relief; and (b) *why* the state courts' treatment of them was § 2254(d)-unreasonable. Merely representing the same IAC passage from appellate and/or state habeas briefs and asking this Court for a "second look" is not enough.

All of Miller's non-defaulted Ground Five claims are simply restated without that extra step. For example, Sparger raised before the *Miller* court Miller's IAC claim that Lowe failed to "seek bifurcation of the possession of a firearm by a convicted felon and corresponding felony murder counts." *Miller*, 283 Ga. at 416 n. 14. The *Miller* court denied it because, even if it was error, Miller could show no *Strickland* level prejudice. *Id.* at 416. Raising the same claim before this Court, doc. 1 at

8, petitioner has simply not shown how the *Miller* court's ruling meets the "double-deference" standard illuminated above.  That is, he has not even shown *how* the error prejudiced him *and* why the *Miller* court's conclusion that it did not is unreasonable.    It is not enough to conclusorily say that a ruling was "unreasonable."   A petitioner must demonstrate *how* it is unreasonable.

Another example is Lowe's failure "to investigate any identity mix ups between [Miller] and his twin brother, depriving defendant of *any* favorable [outcome] on the comparing [of] testimony from [the prosecutor] and Capt. Ethan Davis." Doc. 1 at 9.  Lowe also failed to object to Ethan not being listed as a witness by the state.  *Id.*  What Miller ignores, however, is that at trial he *himself* affirmed that his twin brother had nothing to do with the crime, doc. 15-3 at 62, and he cites no evidence that anyone, let alone the police, were in any way thrown off his trail by his twin brother's existence.  So on the merits this claim fails.  But it also fails procedurally, as the state points out, because he never presented this particular claim to the state courts, and he has failed to overcome the state's exhaustion and default defenses against it.

Yet another example is Miller's re-play of his claim that "the trial

court erred by sentencing defendant for life without parole. . . ." Doc. 1 at 15. Of course, Sparger *won* on that ground before the state supreme court, so there is no point in re-litigating that issue here. The same must be said for Miller's "necessity exception" claim (that the trial court erred in allowing into evidence the deceased victim's statements to others). Doc. 1 at 15. The *Miller* court addressed that on the merits, ruling against him. *Miller*, 283 Ga. at 414. But Miller merely repeats it here without showing § 2254(d)-level error.[8]

Ground Six also fails outright. Doc. 1 at 14-16. Here Miller simply restates *trial error* grounds ("The trial court should have disallowed testimony. . . .") without even attempting to thread them through IAC claims. Again, this is not an appellate court, but a federal *habeas* court.

Finally, it is worth noting Miller's *modus operandi*. At trial, Lowe pursued an "evil twin" defense (*i.e.*, that Miller's identical-twin brother committed the crimes) on his behalf. *See, e.g.*, doc. 15-1 at 80-81 (Lowe's

---

[8] Even at that, "[f]ederal courts generally do not review a state court's admission of evidence in habeas corpus proceedings.... We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial.... A denial of fundamental fairness occurs whenever the improper evidence is material in the sense of a crucial, critical, highly significant factor." *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998); *McKinney v. Jarriel*, 2010 WL 4313394 at * 10 (S.D. Ga. Oct. 8, 2010). Because Miller has not shown fundamental error, this claim fails on this additional ground, too.

opening argument advancing this defense); doc. 15-2 at 126-27; doc. 13-7 at 29-30.   Miller sat and watched him plow that ground and thus question witnesses accordingly.   Evidently concluding that it was not working, Miller *himself* took the stand (doc. 15-3 at 34) and, during a devastating cross-examination (*id.* at 62 - 100) neutralized the defense himself.  *Id.* at 62 (insisting *he* never claimed his twin brother committed the offense).

He then proffered a new, alibi defense -- that he had been traveling to Texas when Sloan was shot. That was immediately impeached.  *Id.* at 94-96 (prosecutor asking him if he could point to just one witness to support that defense; Miller failed to do so).  By all indications, Miller simply thought the defense up on the spot and risked -- since he could not corroborate it -- the jury's disbelief, if not disdain.

His back-fill strategy since has been to simply blame his lawyers. So rather than, for example, contact alibi-corroborating witnesses and obtain post-conviction affidavits or testimony from them, Miller has chosen to simply blame Lowe and Sparger for not producing them.  Of course, he supplies *no* evidence that those witnesses exist or could, within reason, be located.  And what he himself produced at his state

habeas hearing simply backfired against him.  Doc. 13-7 at 48-49.[9]  His

childish, "blame-my-lawyer" strategy can be seen at the start of his trial,

doc. 15-1 at 16-23; doc. 15-4 at 61, during trial, doc. 15-3 at 60-62, and

post-trial (in his new-trial motion, on direct appeal, state and now federal

---

[9]  At that hearing, Miller, having faced several witnesses at trial who said they saw him shoot the victim to death, called two witnesses. Kelly Carter, who *was available at trial* had he wanted to call her as a witness then, doc. 15-3 at 62, testified that she was a long-time friend. She answered his question that she remembered Miller calling her from Texas the night before he turned himself in. She did not, however, supply any foundation for how she could possibly know that he was calling from Texas, other than, evidently, Miller claiming that. Doc. 13-7 at 53-56. Even at that, she later back-pedaled, recalling the phone conversation but not where Miller was claiming to have been calling from. *Id.* at 68-69.

She also insisted that she knew Miller better than two witnesses who testified against Miller at trial. *Id.* at 58-59. As the habeas judge pointed out, this proves nothing, and Miller could not retry the original case in habeas. Nevertheless, Miller also elicited testimony from her to show that he would not be the type to beat others and use a gun at the hotel where Sloan was shot to death. *Id.* at 60-61. Hence, he tried to play Carter, who by her own testimony showed she was not a material witness to any of the events in question, as a character witness -- another improper attempt to retry his case in *habeas* court. He committed the same error in eliciting from her testimony aimed at collaterally impeaching other *trial* witnesses' testimony. *Id.* at 61-65.

Not only did petitioner accomplish nothing by calling Carter as a witness, but the state then brought out the fact that she is a convicted felon. *Id.* at 66-67. It also showed that Lowe in fact had subpoenaed Carter for trial, *id.*, but from the record *Miller himself* has now established, it is clear why Lowe made the entirely reasonable strategic decision *not* to call her. Under the above-noted governing standards, that strategy call is presumed competent. In fact, it *was* competent, as Carter's testimony would *not* have supported any defense at trial, and instead would have harmed Miller's defense.

The only other witness Miller called was himself, and he simply re-argued the IAC and related claims already set forth in his filings. *Id.* at 70-74. Suffice it to say that the state gave Miller an opportunity to put up or shut up on his habeas claims, and he has produced nothing of substance.

habeas proceedings).

His own lawyers confronted him about this.   *See* doc. 15-1 at 18 (Lowe confronted Miller about his IAC concerns at the commencement of his trial); doc. 13-7 at 36-37 (at the habeas hearing Miller, through questioning, confronted Sparger about failing to run down evidence, including beneficial witnesses, to show that Lowe was deficient; Sparger replied that Miller had failed to respond to Sparger's request for information to that end and, after Miller admitted he fell silent on that score, Sparger said: "You're trying to set me up."); *see also id.* at 48-49.

Miller, of course, cannot accept benefits (counsel appointed for him at taxpayer expense) without burdens -- errors that naturally arise from the fact that no one gets a perfect trial, much less a perfect lawyer.  Nor can he simply blame his lawyers for failing to produce what he himself has been free to, but has not, and evidently cannot.

Accordingly, Joseph Miller's § 2254 petition must be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue.   28 U.S.C. § 2253(c)(1); *see*

*Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

    **SO REPORTED AND RECOMMENDED** this 6th day of March, 2012.

                                                                         **UNITED STATES MAGISTRATE JUDGE**
                                                                         **SOUTHERN DISTRICT OF GEORGIA**